# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD KANAS,

        Petitioner,

v.                                               Case No. 08-CV-291

TODD NEHLS,

        Respondent.

## ORDER

On April 4, 2008, Edward Kanas, a Wisconsin state prisoner, petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket #1). On January 30, 2009, the court denied his petition. (Docket #18). On March 18, 2009, petitioner filed a Motion for Certificate of Appealability (Docket #25). For the reasons explained herein, the court denies petitioner's motion.

### LEGAL STANDARD

Before a habeas petitioner may take an appeal to the Seventh Circuit, the district court must consider whether to grant the petitioner a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c). Fed. R. App. P. 22(b). The COA may issue only if the applicant makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). If the court issues a COA, it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3).

## BACKGROUND

In the court's order denying petitioner's habeas petition, the court identified two arguments on which petitioner was proceeding. The first argument was that he did not receive a "full and fair opportunity to litigate" because the state courts did not "apply the proper constitutional case law to the facts." The second argument was that he did not receive a "full and fair opportunity to litigate" because the state appellate court did not "carefully and thoroughly analyze[] the facts." The court found that the first argument failed because the state courts did apply the proper constitutional standard, and the petitioner simply did not agree with the state courts' conclusions. The court further pointed out that it is not this court's role to question the state courts' findings, but rather to ensure the proper process was followed. The court found that the second argument failed because the few mistakes in the state appellate court's opinion that petitioner pointed to as evidence that the court of appeals did not carefully and thoroughly analyze the facts were not sufficiently significant.

## ANALYSIS

Petitioner now seeks a COA arguing: I) the state trial court failed to apply the proper constitutional law, as shown by its failure to review the affidavit stripped of the

affiant's false statement; II) the state trial court did not carefully and thoroughly analyze the facts concerning whether the affiant's misstatement was intentional or made with reckless disregard for the truth; and, III) the state appellate court did not carefully and thoroughly analyze the facts, as evidenced by factual mistakes in its written opinion.

I. **Whether the Trial Court Failed to Apply the Proper Constitutional Standard**

As to the first argument, the court will not grant a COA as to this matter, for the petitioner has not presented any argument that would explain why the correct constitutional standard was not applied. As the court explained in its order, neither state court had need to examine the affidavit sans the misstatement, unless one of those courts concluded that the misstatement was intentional or made with reckless disregard. Because neither state court concluded either of those things, neither had any reason to strip the misstatement from the affidavit. For this court to rule that either state court should have stripped the misstatement would be tantamount to this court examining whether those courts made the right decision as to the affiant's state of mind. As this court explained in its order, that is not its role. Petitioner's argument is now, as it was before, namely that the state court reached the wrong decision about the affiant's intent in making the misstatement. Such an argument is "an improper attack on the merits of the state court's analysis." *U.S. ex rel. Anderson v. Clark*, 2000 WL 1700127, 5 (N.D. Ill. 2000) (citing *Rivera v. Page*, No. 97 C 8381, 1998 WL 698913, 3-4 (N.D. Ill. 1998)). Perhaps the state courts did

reach the wrong decision regarding the affiant's state of mind; however, that is not the same as applying the wrong constitutional standard. Thus, petitioner has not made a "substantial showing" as to this issue.

## II. Whether the Trial Court Failed to Properly Analyze the Facts

Petitioner's second argument is that the state trial court's opinion evidenced a misunderstanding of the facts pertaining to the affiant's misstatement, which shows that the trial court did not carefully and thoroughly analyze the facts regarding this issue. The basis for this argument is the fact that the trial judge stated that the affiant took GPS readings of the location of the marijuana plants, yet then the affiant "didn't connect up the GPS with the plat book." (Trans. at 50). This statement by the judge indicates that the judge thought that the affiant, Deputy Rohr, took the GPS readings of the marijuana plants, but then did not accurately consult the plat book to determine who owned the land that corresponded to those GPS locations. It is very clear from Deputy Rohr's testimony, however, that Rohr did locate the corresponding property in the plat book. Thus, it is factually incorrect to say that he "didn't connect up the GPS with the plat book." Rohr's mistake was that when he saw that the owner of the corresponding land in the plat book was "Kanas Farms, Inc." he assumed that that meant Carl and Catherine Kanas owned the property. Thus, he listed in his affidavit for a search warrant, "Carl and Catherine Kanas" as the owner's of the property corresponding to the GPS coordinates. This is a mistake of a fundamentally different nature than the mistake the trial judge apparently thought Rohr made.

The court agrees with petitioner that the trial judge's misunderstanding of what occurred does indicate that the trial judge did not "carefully and thoroughly analyze the facts." However, the court, nevertheless, is unable to grant petitioner's request for a COA as to this issue. First, petitioner did not raise this argument in either his Petition for Writ of Habeas Corpus (Docket #1) or in his Response to Motion to Dismiss (Docket #13). The only reference to the trial judge's mistake about Rohr not "connecting up" the land to the plat book is found in petitioner's response brief, and that one reference is made solely within the context of petitioner's argument that the trial judge did not apply the correct constitutional standard, not that the trial judge did not carefully consider the facts. (Petr's Br. Resp. Mot. Dismiss at 9-10). Indeed, petitioner did not articulate any argument, prior to his motion for a COA, in which he alleged that the he did not receive a full and fair opportunity to litigate as a result of the *trial court's* failure to carefully and thoroughly analyze the facts. Second, even if the trial judge failed to properly analyze the facts, as shown by his statement that Rohr did not connect up the GPS readings with the plat book, the court of appeals clearly did not make the same mistake the trial court made. Rather the court of appeals appreciated that Rohr did connect up the GPS locations with the plat book. The court of appeals found that though Rohr connected up the GPS location with the plat book (thus knew that the marijuana was on land owned by Kanas Farms, Inc., not Carl and Catherine Kanas) Rohr provided a reasonable explanation for his mistake, and thus it held that he did not act intentionally or with reckless disregard for the truth. Thus, there can be no argument that the court of appeals denied
-5-

Case 2:08-cv-00291-JPS   Filed 05/04/09   Page 5 of 16   Document 27

petitioner a full and fair opportunity to litigate by failing to carefully analyze facts regarding the nature of Rohr's mistake. Petitioner did, however, present two alternative arguments asserting that the court of appeals failed to carefully and thoroughly analyze the facts regarding the reasonableness of Rohr's mistake. Yet, detailed herein, those arguments also fail.

**III. Whether the Court of Appeals Failed to Properly Analyze the Facts**

Petitioner's first argument as to the court of appeals analysis of the facts (which only appears in petitioner's response to the motion to dismiss, not in petitioner's COA motion) posits that the court of appeals failed to carefully and thoroughly analyze the facts regarding the affiant's state of mind, as shown by the fact that the court of appeals ruled that the affiant did not act intentionally or with reckless disregard for the truth. (Pet'r Br. Resp. Mot. Dismiss at 11). This argument begs the question. It essentially claims that Rohr so clearly acted intentionally or with reckless disregard for the truth that the only way the court of appeals could find that he did not act with one of those states of mind would be if the court of appeals failed to carefully and thoroughly analyze the facts. Not only is such an argument a logical fallacy, positing a conclusion as evidence, but it is also "an improper attack on the merits of the state court's analysis." *U.S. ex rel. Anderson v. Clark*, 2000 WL 1700127, 5 (N.D. Ill. 2000) (citing *Rivera v. Page*, No. 97 C 8381, 1998 WL 698913, 3-4 (N.D. Ill. 1998)).

Petitioner's second argument regarding the court of appeals' analysis of the facts is more persuasive. This argument – instead of simply stating that the court

-6-

of appeals could not have properly analyzed the facts, as shown by the fact the court ruled adversely to petitioner – rather focuses on factual errors in the court of appeals opinion. Petitioner points to these factual errors as evidence that the court of appeals did not carefully and thoroughly analyze the facts. Petitioner draws the court's attention to three factual errors in particular. The alleged errors are that the court of appeals stated: 1) that the Kanas Farms, Inc. land "is adjacent to land owned by Carl and Catherine" Kanas; 2) that Rohr testified that "he had seen Thomas Kanas, the adult son of Carl and Catherine, tending marijuana plants; and 3) that Rohr testified that he had seen Thomas driving a tractor to and from the barn on the land owned by Carl and Catherine. Petitioner points out that the court of appeals posited these facts in explaining why it was holding that Rohr's mistake was neither intentional nor made with reckless disregard. Petitioner thus argues that that ruling hinged on mistaken facts and, when that occurs, the ruling court has necessarily failed to conduct a careful and thorough analysis of the facts. (Pet'r Br. Resp. Mot. Dismiss at 12-13) (citing *Weber v. Murphy*, 15 F.3d 691, 694 (7th Cir. 1994) ("[W]e cannot say that a state court has 'carefully and fully analyze[d]' the facts of a Fourth Amendment claim if its factual findings are not fairly supported by the record.")). While this argument is indeed more persuasive than petitioner's previous argument as to whether the appellate court failed to properly consider the facts, it is nonetheless insufficient to warrant the granting of a COA.

-7-
Case 2:08-cv-00291-JPS   Filed 05/04/09   Page 7 of 16   Document 27

### 1. The Statement That the Properties Are "Adjacent"

Petitioner points to the court of appeals' statement that the Kanas Farms, Inc. land "is adjacent to land owned by Carl and Catherine" Kanas as a factual error indicating that the court of appeals failed to carefully and thorough analyze the facts of petitioner's case. Petitioner argues that the above statement is clearly factually incorrect, as the uncontroverted evidence shows that a heavily wooded strip of land lies between the Carl and Catherine Kanas property and the Kanas Farms, Inc. property. However, the determining question for this court's purposes is not whether the two pieces of property are actually "adjacent," but rather whether the court's statement that they are adjacent implies that the court of appeals refused "to take seriously its obligation to adjudicate claims under the fourth amendment." *Hampton v. Wyant*, 296 F.3d 560, 564 (7th Cir. 2002). If the statement "lack[s] *any* basis in the record" that could, but would not necessarily, indicate that perhaps petitioner was denied a full and fair opportunity to litigate. *See Miranda v. Leibach*, 394 F.3d 984, 998 (7th Cir. 2005) ("We shall assume, without deciding, that if the Illinois Appellate Court's determination that Chavez was not arrested lacked *any* basis in the record, Miranda may have been deprived of a full and fair opportunity to litigate.") (emphasis in original).

It would not be fair to say that the court of appeals' statement lacks any basis whatsoever in the record. While this court would agree with petitioner that the statement that two pieces of property are "adjacent" would normally mean that they share a common border, it would appear in this case that a different meaning is not

absolutely beyond reason.  Indeed, throughout the arguments to the trial court, the term "adjacent" was used to describe these two properties, though it was also made clear that a narrow strip of land owned by the University of Wisconsin lay between the two pieces of property.  Perhaps most telling is the fact that the state, in summing up its argument to the trial court at the Franks hearing, referred to the properties as being "adjacent," yet the defense in its responding argument (commenced less than a minute after the state had just referred to the properties as "adjacent") did not in any way take issue with the characterization of the properties as "adjacent."  (Trans 49/2-25).  Clearly, use of the term "adjacent" to describe two properties very near to one another was not at that time considered so objectionable or flat out incorrect so as to warrant response.

Perhaps more fundamental though is the fact that the "adjacent" character of the two properties is not inherently what is at issue here.  The court of appeals' point in considering the proximity of the two properties to one another was to evaluate the reasonableness of Rohr's mistake in assuming that the fact that the name "Kanas" appeared in the plat book for both properties meant they were both owned by the same people.  That mistake on Rohr's part does not become significantly more unreasonable based on the fact that the two properties were separated by a strip of land owned by the University of Wisconsin.  To hold that the court's use of the term "adjacent" demonstrates that the court's findings lacked *any* basis in the record would be to completely sacrifice function in the name of legalistic form.

-9-
Case 2:08-cv-00291-JPS   Filed 05/04/09   Page 9 of 16   Document 27

### 2. Rohr's Statement That Said He Had Seen Thomas Tending the Plants

The same can be said for petitioner's argument that the court of appeals' statement that "[Rohr] explained he had seen Thomas Kanas, the adult son of Carl and Catherine, tending the marijuana plants" constitutes a factual misstatement indicating that the court of appeals did not properly consider the facts. Undeniably, Rohr did explain at the hearing that while he originally thought that he had seen Thomas tending the plants – thus his affidavit in support of the warrant states that he saw Thomas tending the plants – he had later come to believe that the person he saw was in fact Edward Kanas (petitioner). (Trans. 16/22 - 17/2). To determine whether the court of appeals' statement ("[Rohr] explained he saw Thomas . . . tending the marijuana plants") represents a failure to carefully and thoroughly analyze the facts, this court must look at the court of appeals' statement in context. The court of appeals was analyzing whether Rohr's mistake in assuming the two properties were owned by the same people demonstrated an intentional act or a reckless disregard for the truth. Thus, the court necessarily was charged with examining Rohr's state of mind at the time Rohr submitted the affidavit, not Rohr's state of mind at the hearing. At the time Rohr submitted the affidavit, he believed that it was Thomas he saw tending the plants. Thus, the statement the court of appeals made about Rohr having seen Thomas tending the plants is relevant to the inquiry it was conducting, unlike Rohr's later statement (that he subsequently came to believe that it was Edward he had seen tending the plants), which was wholly

irrelevant to the court's inquiry. The belief that it was in fact Edward was formed only after Rohr submitted the affidavit in support of the warrant, and had no bearing whatsoever on his state of mind at the time he wrote "Carl and Catherine Kanas" as the owners of the property on which the plants were growing. Certainly the court of appeals could, and perhaps should, have written its opinion more clearly. However, what is clear is that the court of appeals did consider the proper evidence. It would have been incorrect for the court of appeals, in evaluating Rohr's state of mind when he submitted the affidavit, to discuss Rohr having seen Edward tending the plants, because at the time Rohr submitted the affidavit, he believed it was Thomas he had seen tending the plants. For this court to rule that the court of appeals, even though it examined the correct evidence in the correct context, did not carefully and thoroughly analyze the facts would be to engage in a game of legal "gotcha" aimed at exalting technicalities over substance.

### 3. Rohr's Statement That He Had Seen Thomas Driving the Tractor to and from Both Properties

The final statement that petitioner points to as evidence that the court of appeals did not carefully and thoroughly analyze the facts is the court of appeals' statement that "[Rohr] explained that he . . . had also seen Thomas driving a tractor to and from the barn on the land owned by Carl and Catherine." Petitioner argues that "Rohr testified that there is nothing in his affidavit that states he observed Thomas Kanas driving the tractor to and from the barn." (Mot. COA at 4) (citing Trans. 29). Indeed, Rohr did testify that there is nothing in the affidavit that says he

saw Thomas driving the tractor to and from the barn. (Trans. 29/18-22). However, the court of appeals never stated that the affidavit stated that Rohr had seen Thomas Kanas going to and from the barn. The court stated that Rohr explained that he had seen Thomas Kanas driving the tractor to and from the barn. This statement certainly finds a factual basis in the record:

> Q: And the locations where you saw [Thomas] on the tractor and, quote, unquote, working the farm, was that on the Kanas farms property, or was that on the property, adjacent property that was actually searched?
>
> A: I observed him in both locations, going to and from.

(Trans. 28/11-15). While it is true that Rohr did not actually say that he saw Thomas driving the tractor to the barn on the property searched, he clearly said he saw Thomas coming and going on the tractor from the property searched. Given that the property searched covers an area of "about [an] acre and-a-half[] [to] two acres, and contains a "main house and out buildings" (Trans. 25/25 - 26/1), it is neither unreasonable, nor does it evidence a failure to properly analyze the facts, for the court of appeals to have added the term "barn" to the statement that Thomas was coming and going from the property on the tractor. It seems logical that he would park the tractor in the barn. Perhaps he did not. It is completely irrelevant. What is relevant is that Rohr clearly stated that at the time he put Carl and Catherine as the owners of both pieces of property, his belief in doing so was in part influenced by the fact that he had seen Thomas coming and going from both properties on the tractor. The fact that the affidavit did not say as much is also irrelevant. The court

-12-

Case 2:08-cv-00291-JPS    Filed 05/04/09    Page 12 of 16    Document 27

of appeals' statement that the petitioner now attacks was made during the court's analysis of Rohr's state of mind.  For the purposes of that analysis, what is stated in the affidavit is not dispositive (as it would be in an analysis of the sufficiency of the affidavit).  Even if it is not in the affidavit, it is indeed relevant that Rohr had seen Thomas coming and going from both properties on the tractor, and that that influenced his belief that the two properties were owned by the same people (Thomas's parents).

Whether the affidavit stated that Rohr had seen Thomas coming and going on the tractor pertains not as much to Rohr's state of mind when he submitted the affidavit, as it does to whether the affidavit itself – including the challenged statement (that Carl and Catherine Kanas owned both properties) – supported issuance of the warrant.  The court of appeals analysis of this topic is found in a different part of its opinion than its analysis of Rohr's state of mind.  Unfortunately, when analyzing whether the affidavit supported probable cause, the court of appeals again said that Rohr stated he had seen Thomas Kanas "going between the plants and the barn near the house on his tractor."  This is not false, Rohr did say that (except that Rohr did not specify that it was the "barn").  However, it would certainly seem to be irrelevant to the question of whether the affidavit supported issuance of a warrant, since the affidavit did not state that Rohr had seen Thomas "going between the plants and the barn near the house on his tractor."

Even if the court of appeals should not have considered that evidence, there are numerous reasons why it is not germaine to the question of whether this court

-13-

should issue a COA. First, petitioner's brief in response to the motion to dismiss only took issue with the court of appeals' statement within the context of the appellate court's analysis of Rohr's state of mind. (Pet'r Br. Resp. Mot. Dismiss at 12) ("The adequacy of the court of appeals' review is called into question by its incorrectly citing that: . . . c) [Rohr] 'had also seen Thomas driving a tractor to and from the barn on the land owned by Carl and Catherine Kanas.' [Court of Appeals Decision dated December 6, 2007, Page 3]."[1]). Petitioner did not allege that the other statement about Thomas going between the plants and the barn – the statement made by the appellate court in its analysis of the sufficiency of the affidavit – evidenced a failure to carefully and thoroughly analyze the facts.[2]

Second, even if petitioner had challenged the second statement pertaining to Thomas going between the plants and the barn – the statement made by the appellate court in its analysis of the sufficiency of the affidavit – that challenge would necessarily have failed. For, as previously mentioned, the problem with the second statement about Thomas going between the plants and barn is not that it is factually incorrect (except for the "barn" part), Rohr did say he witnessed as much. The problem is that it is irrelevant to the consideration of the sufficiency of the affidavit, because that information is not in the affidavit. Thus, petitioner's claim as to that

---

[1] Petitioner unequivocally quoted and cited the portion of the court of appeals' opinion that dealt with Rohr's state of mind. No where on page three of its opinion (the page petitioner quoted from and cited to) does the court of appeals address the issue of the sufficiency of the affidavit. Similarly, the quoted language is not at all referenced in the appellate court's discussion of the sufficiency of the affidavit, it is only discussed in relation to Rohr's state of mind.

[2] Petitioner never quotes or cites to the portion of the court of appeals' opinion in which the court of appeals, in its discussion of the sufficiency of the affidavit, states that Rohr witnessed Thomas going between the plants and the barn on his tractor.

-14-

Case 2:08-cv-00291-JPS   Filed 05/04/09   Page 14 of 16   Document 27

statement would have to be, not that the court's fact findings lacked any basis in the record, but rather that the court made a legal error by justifying a decision based on irrelevant evidence. Such a claim would be facially insufficient, as such a legal mistake would not constitute the type of "egregious error" necessary "to imply that the state judges have closed their ears and minds to [petitioner's] argument." *Hampton v. Wyant*, 296, F.3d 560, 564 (7th Cir. 2002). Third, the fact that Thomas was seen going between the plants and the barn was only one piece of evidence that the court considered in reaching its conclusion that the affidavit was sufficient. It is not this court's role to ensure that the court reached the proper result, but rather only to ensure a defendant is provided the requisite procedure. *See Cabrera v. Hinsley*, 324, F.3d 527, 532 (7th Cir. 1003). Thus, it is clear that even if petitioner had challenged the second statement pertaining to Thomas going between the plants and the barn – the statement made by the appellate court in its analysis of the sufficiency of the affidavit – that challenge would have failed for the above two reasons.

## CONCLUSION

Petitioner's motion for a COA raises three issues. The first issue, whether the state trial court applied the proper constitutional law, fails to warrant a COA because petitioner has not offered any rationale by which this court could find, absent ruling on the merits of the state court's decision, that the state court did not apply the proper constitutional standard. The second issue, whether the trial court failed to carefully and thoroughly analyze the facts regarding Rohr's misstatement, fails to

-15-

warrant a COA because petitioner did not raise this issue prior to his COA motion. It also fails because even if the trial court did fail to carefully and thoroughly analyze the facts regarding that issue, the court of appeals did not, thus, petitioner did receive a full and fair opportunity to litigate that issue. The third issue, whether the court of appeals failed to carefully and thoroughly analyze the facts, fails to warrant a COA because the factual "mistakes" petitioner points to do not lack any basis in the record, and because these "mistakes" evidence poor wording more than a failure to properly analyze the facts.

Accordingly,

**IT IS ORDERED** that petitioner's Motion for Certificate of Appealability (Docket #25) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 4th day of May, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge